UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUUL LABS, INC., <br>     *Plaintiff*, <br><br> v. <br><br> RAK ENTERPRISE LLC, <br>     *Defendant*. | )<br>)<br>)  3:21-CV-969 (OAW)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING DEFAULT JUDGMENT**

  **THIS CAUSE** is before the court upon Plaintiff's Motion for Default Judgment and supporting memorandum (together, "Motion"). *See* ECF Nos. 15 and 15-1. The court has reviewed the Motion, all exhibits attached thereto, and the record in this matter and is thoroughly apprised in the premises. Defendant has not appeared in this action. For the reasons discussed herein, the court grants the Motion.

**I. BACKGROUND**

  Plaintiff is a company which designs, manufactures, and distributes electronic nicotine delivery systems. ECF No. 1 at ¶ 3. Defendant owns and operates a gas station. *Id.* at ¶ 2. A representative of Plaintiff's made an in-person purchase of Defendant's wares in November 2015 and later confirmed that the items were, in fact, counterfeits of Plaintiff's products. *Id.* at ¶ 21. The following month, Plaintiff's counsel mailed Defendant a cease-and-desist letter. *Id.* at ¶ 22. Defendant never replied to the letter. *Id.* at ¶ 23.

  A representative of Plaintiff's made another in-person purchase at Defendant's establishment in June 2020, and upon inspection of the purchased products, confirmed that one was counterfeit and one was a product which Plaintiff distributes overseas, but

which is not properly labeled for sale in the United States (a so-called "grey-market good"). *Id.* at ¶ 25–26.

Plaintiff filed this action on July 13, 2021, asserting the following claims against Defendant: trademark infringement under 15 U.S.C. § 1114 with respect to the counterfeit and grey-market goods (Counts One and Four, respectively); false designation of origin under 15 U.S.C. § 1125(a) with respect to the counterfeit goods (Count Two); unfair competition under 15 U.S.C. § 1125(a) with respect to the counterfeit goods (Count Three); unfair trade practices under Conn. Gen. Stat. §42-110a et seq. (Count Five); and common law unfair competition (Count Six). *See* ECF No. 1. Defendant was served the following day but has failed to make an appearance in this action. *See* ECF No. 11. Default was entered on January 18, 2022. *See* ECF No. 14. Plaintiff has now moved for entry of default judgment, an award of damages, and a permanent injunction.

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process for obtaining default judgment. First, a plaintiff may apply to the clerk of court to enter a default against a party that has failed to plead or defend itself. Fed. R. Civ. P. 55(a). Next, the plaintiff may seek a default judgment. Where the plaintiff has made a claim for a sum certain or a sum easily ascertainable through computation, the clerk may also enter the default judgment. Fed. R. Civ. P. 55(b)(1). Where that is not the case, though, the plaintiff must move the court for default judgment. Fed. R. Civ. P. 55(b)(2); *see also New York v. Green*, 420 F.3d 99. 104 (2d Cir. 2005).

In reviewing a motion for default judgment, a court accepts as true all well-pleaded allegations in the complaint, except those relating to damages. *451 Mktg., LLC v. Namco, LLC*, No. 3:17-CV-01927(MPS), 2019 WL 11894409, at *2–3 (D. Conn. Sept. 30, 2019). The court must first consider whether these accepted facts establish liability as a matter of law. *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Once liability is established, the court may award the plaintiff any relief to which it is entitled. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). The court has discretion to determine whether an evidentiary hearing is necessary in the determination of damages.[1] Fed. R. Civ. P. 55(b)(2); *see also Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 112 (E.D.N.Y. 1997).

### III.  DISCUSSION

#### a. *Liability*

The first question before the court is whether Plaintiff's complaint establishes liability as to each claim as a matter of law. Plaintiff has asserted six claims total, four of which are asserted under the Lanham Act, 15 U.S.C. § 1051 et seq., one under the Connecticut Uniform Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a et seq., and one under common law. Of the four Lanham Act claims, two allege trademark infringement (one claim for the counterfeit goods, one for the grey-market goods), one alleges false designation of origin, and one alleges unfair competition.

---

[1] The court finds an evidentiary hearing is unnecessary in this case.

The court finds that one of the Lanham Act claims is duplicative. "[T]here is no specific [f]ederal cause of action for unfair competition. Instead[,] unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising." *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272 (E.D.N.Y. 2014); *see also Juul Labs, Inc. v. EZ Deli Grocery Corp I*, No. 21CV2615MKBVMS, 2022 WL 819152, at *1–2 (E.D.N.Y. Mar. 18, 2022) (denying default judgment on a federal unfair competition claim as it was duplicative of a federal false designation of origin claim). Plaintiff has alleged both a claim for false designation of origin and a claim for unfair competition with respect to the counterfeit goods, but these are the same claim. *See* ECF No. 1 at ¶ 52 (stating that the basis of the unfair competition claim are the acts that "amount to false designations."). The court therefore will deny the Motion with respect to Count Three, the federal unfair competition claim.

With respect to Counts One, Two, Four, and Five, a common law unfair competition claim, a trademark infringement claim pursuant to § 1114(a), and a claim for false designation of origin pursuant to § 1125(a) all have the same elements. To establish liability on all these claims, Plaintiff must show that Defendant "(1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of [P]laintiff's [protected] mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993)); *see also Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (finding that both claims arising under 15 U.S.C. § 1114(1) and claims arising under 15 U.S.C. § 1125(a) are

analyzed using the *Gruner* test); *Country Floors Inc. v. Mizak*, No. 3:91-CV-628 JAC, 1993 WL 566217, at *6 (D. Conn. June 16, 1993) (agreeing that "the same facts which would support a finding of liability under Sections 32 and 43 of the Lanham Act[, 15 U.S.C. §§ 1114 and 1125, respectively,] also support a finding of trademark infringement and unfair competition under Connecticut common law.").

Plaintiff has satisfied all the elements of the *Gruner* test. First, Plaintiff has shown that it has registered the three trademarks used on the counterfeit and grey-market goods with the United States Patent and Trademark Office, *see* ECF No. 1-1, which registration constitutes "conclusive evidence of the validity of the registered mark . . . , of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . ." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 85 n.4 (2d Cir. 2020) (quoting 15 U.S.C. § 1115). Plaintiff also has alleged that Defendant used these marks without Plaintiff's consent in commerce. The first three elements therefore are satisfied.

With respect to the final element, Plaintiff has pled that the use of its registered trademarks are likely to confuse consumers and cause them to believe the products at issue are genuine articles lawfully distributed in the United States. *See* ECF No. 1 at ¶¶ 20, 58. But courts must analyze a number of factors in determining whether confusion is likely: (1) the strength of the plaintiff's mark, (2) the degree of similarity between the plaintiff's mark and the mark used by the defendant, (3) the competitive proximity of the products, (4) the likelihood that the plaintiff will offer a product like the defendant's, (5) actual confusion of the products, (6) whether the defendant acted in good faith, (7) the

quality of defendant's product, and (8) the sophistication of the buyers. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

Applying these factors to the case at bar, the court finds that Plaintiff has shown a likelihood of confusion. There is no evidence about the sophistication of the buyers or whether Defendant acted in good faith, but because Plaintiff has alleged that Defendant sold counterfeit and grey-market goods, the remainder of these factors necessarily weigh in Plaintiff's favor. The marks used on the products Defendant sold were Plaintiff's marks, and at least with respect to the grey-market goods, the products sold were Plaintiff's products. Hence, the balance of factors indicate a very strong likelihood of confusion.

Therefore, the court concludes that Plaintiff has satisfied all the elements of the Lanham Act and common law claims, and, consequently, that Plaintiff has established liability as a matter of law with respect to Counts One, Two, Four, and Five.

Because the court concludes that liability has been established under the Lanham Act, the court also must conclude that liability has been established under CUTPA. *See Anthem Sports, LLC v. Under the Weather*, LLC, 320 F. Supp. 3d 399, 420 (D. Conn. 2018) (noting that "a Lanham Act violation is a per se violation of CUTPA . . . .") (quoting *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F.Supp.2d 497, 506 (D. Conn. 2009)). Therefore, Plaintiff has also established liability with respect to Count Six.

### b. *Remedies*

Plaintiff having established liability with respect to all claims save Count Three, the court must now determine whether Plaintiff's requested remedies (a permanent injunction and damages) are appropriate.

With respect to damages, the Lanham Act allows for an injured party to recover damages, costs, and the offending party's profits. 15 U.S.C. § 1117(a). In the alternative, in a case involving the use of counterfeit marks, a plaintiff may elect to seek statutory damages of $1,000–200,000. 15 U.S.C. § 1117(c)(1). Where the use of a counterfeit mark was willful, statutory damages may be awarded in an amount of up to $2,000,000 per mark. 15 U.S.C. § 1117(c)(2).

Here, Plaintiff seeks statutory damages since calculating Defendant's profits is difficult if not impossible without Defendant's participation in the action. Plaintiff contends that it could seek to up to $6,000,000 in statutory damages for willful and unlawful use of three marks, but that $90,000 would suffice to compensate for the injury it sustained, to deter others from similar endeavors, and to deter Defendant from continued infringement. Plaintiff also asserts that an award of $90,000 would be in line with what has been awarded in similar cases in this district. *See JUUL Labs, Inc. v. Farmington Xpress Mart LLC*, No. 3:20-cv-01920-JCH (D.Conn. May 12, 2021) (ECF No. 14).

When awarding statutory damages, it is incumbent upon the court to determine what is "just." 15 U.S.C. § 1117(c). While the Lanham Act does not specify what constitutes a "just" award, courts applying the damages provisions often look to caselaw interpreting an analogous provision of the Copyright Act. *Coach, Inc. v. O'Brien*, No. 10 CIV. 6071 JPO JLC, 2012 WL 1255276, at *2 (S.D.N.Y. Apr. 13, 2012). In those cases, courts review the following factors: (1) the expenses saved and the profits reaped by the offending party; (2) the plaintiff's lost revenues; (3) the value of the copyright (or mark) infringed upon; (4) the deterrent effect of damages upon other actors (5) whether the

7

defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in calculating appropriate damages; and (7) the deterrent effect on the defendant. *Id.*

It is difficult to apply these factors here, though, where the record is devoid of pertinent evidence. The court recognizes that this absence of information largely results from Defendant's failure to appear in this action. Without Defendant's provision of evidence as to their profits, volume of sales, and mitigating circumstances, the first two Copyright Act factors are unascertainable, and the sixth is moot.[2] The court further recognizes that, with respect to fifth factor, in some districts a defendant's default is considered per se evidence of willfulness, *see, e.g., Off-White LLC v. ^_^Warm House^_^Store*, No. 17CIV8872GBDGWG, 2019 WL 418501, at *5 (S.D.N.Y. Jan. 17, 2019), and Plaintiff has alleged that Defendant continued to sell the counterfeit and grey-market goods even after receiving a cease-and-desist letter, which also is sufficient to show willfulness. *See Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 164 (E.D.N.Y. Mar. 26, 2016) (stating that one way to prove willfulness is to show "that the defendant was actually aware of the infringing activity. . . ."). The court therefore concludes that Plaintiff has shown that Defendant's violation was willful, which conclusion favors a substantial damages award.

However, with respect to the third factor, the value of the three marks at issue remains unclear. Defendant only states in conclusory fashion that it has "great commercial value" in the marks. *See* ECF No. 15-1 at 18. The court also notes that one of the marks at issue simply is the name "Juul" in "standard characters without claim to

---

[2] The court also notes, however, that Plaintiff presumably has personal knowledge of, for example, the cost of the products it purchased, and the number of products for sale at Defendant's establishment.

any particular font style, size or color," ECF No. 15-8 at 2, while another is the name "Juul" in "stylized lettering," ECF No. 15-8 at 3.  It thus appears that Defendant's wares necessarily infringe upon both marks at once, though they only bear the latter, stylized mark.  It is not clear how damages should be calculated where a single image infringes upon two trademarks, and the relative value of those two marks is not shown.

Considering all these factors, the court concludes that an award of $80,000 is appropriate in this case.  This is slightly less than Plaintiff asks for, but is adequate deterrence against future violations, both as to this defendant specifically but also more generally, and it takes into account the absence of liability with respect to Count Three and the uncertain value of the trademarks at issue.  Plaintiff also shall be awarded post-judgment interest at the statutory rate.  28 U.S.C.A. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.")

With respect to injunctive relief, the Lanham Act also grants courts the authority to issue injunctions to prevent the future violation of trademark rights.  15 U.S.C. § 1116.  To merit such relief, however, Plaintiff must show "(1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020), adhered to in part on reconsideration, No. 18-CV-1774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

The court finds that Plaintiff has satisfied all the requirements for injunctive relief.  Defendant's default suffices to show a violation of the Lanham Act such that irreparable

harm is presumed. *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction."); *see also Johnson v. Mi Rancho, LLC*, No. 3:19-CV-00862 (MPS), 2021 WL 6498264, at *7 (D. Conn. Aug. 16, 2021) (finding a default adequate to satisfy the first factor). Also, there is no adequate remedy at law to address this ongoing injury, since it seems that Defendant will continue its unlawful actions, considering that it already has ignored a cease-and-desist letter. *See Mattel, Inc. v. www.fisher-price.online*, No. 21-CV-9608 (LJL), 2022 WL 2801022, at *11 (S.D.N.Y. Jul. 18, 2022) (finding that a plaintiff has no adequate remedy at law if it shows that the defendant is likely to continue its infringement absent an injunction). And particularly given Defendant's failure to appear in this action, and the fact that Defendant has complete and sole control over the cessation of any ongoing injury, the balance of hardships warrants an equitable remedy for the Plaintiff. And finally, the Lanham Act itself recognizes a strong public interest in the protection of intellectual property. *See Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989) (noting a public interest in "avoiding consumer confusion"). Therefore, injunctive relief is appropriate here.

## IV.  CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. The Motion for Entry of Default Judgment (ECF No. 15) is **GRANTED in part.**
    a. The motion is granted with respect to Counts One, Two, Four, Five, and Six**.**
    b. The motion is denied with respect to Count Three.

2. Plaintiff is awarded $80,000 in damages. Post-judgment interest shall accrue at the statutory rate.

3. Plaintiff's request for a permanent injunction is granted.  Defendant and its respective agents, servants, employees, and representatives, and all persons in active concert and participation with them, are hereby permanently enjoined and restrained from:

   (i) engaging or continuing to engage in the infringing, unlawful, unfair, or fraudulent business acts or practices, including the marketing, sale, distribution, and/or other dealing in any non-genuine JUUL Products such as fake counterfeit products or unauthorized grey-market products;

   (ii) using without permission any mark or other intellectual property right of JUUL Labs, Inc.;

   (iii) acting to infringe federally-registered, applied-for, and common law trademarks owned by plaintiff JUUL Labs, Inc.;

   (iv) falsely designating the origin of any product to be from JUUL Labs, Inc.;

   (v) engaging in unfair competition with JUUL Labs, Inc.; or

   (vi) acting in any other manner to derogate JUUL Labs, Inc.'s intellectual property rights.

4. The court respectfully requests that the Clerk of Court enter judgment consistent with this order in Plaintiff's favor and against Defendant.

5. The court further asks the Clerk of Court to please **CLOSE** this case.

**IT IS SO ORDERED** in Hartford, Connecticut, this 6th day of September, 2022.

                                                 _/s/_
                                        OMAR A. WILLIAMS
                                        UNITED STATES DISTRICT JUDGE